The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Lindell A. RENAUD, Defendant–Appellant.

No. 95CA1233.

Colorado Court of Appeals, Div. 1.

Dec. 12, 1996.

Rehearing Denied Jan. 16, 1997.

Certiorari Denied Sept. 8, 1997.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Eric V. Field, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

H. Craig Skinner, Gregory Dee Rawlings, Denver, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Lindell Renaud, appeals from the judgment of conviction entered on a jury verdict finding him guilty of first degree felony murder, second degree murder, and attempted aggravated robbery. We affirm.

On May 16, 1989, according to defendant's version of the events, he entered a liquor store with a concealed, but unloaded, shotgun

intending to commit a robbery. However, after defendant announced his intentions, the victim brandished a weapon and told defendant it was loaded. Defendant then attempted to flee, told the victim that his shotgun was not loaded, set the unloaded shotgun on the floor, and stated to the victim that he gave up. The victim threatened to shoot the defendant and, when the victim temporarily disappeared from view, defendant loaded his shotgun, relocated the victim, and shot the victim out of fear that the victim would shoot first. Defendant was the only surviving witness to the events and, for the purposes of addressing defendant's contentions of instructional error, we assume his depiction of the events is accurate.

Following trial, on October 5, 1990, defendant filed a motion for new trial alleging jury misconduct and errors in instructing the jury with respect to his defense of "surrender." The trial court denied the motion for new trial on October 11, 1994, approximately four years after it was filed.

## I.

■ At the outset, we reject the People's argument that defendant abandoned his motion for a new trial based upon the delay in the trial court's ruling on that motion. In support of the abandonment argument, the People cite *People v. Fuqua,* 764 P.2d 56 (Colo.1988). However, *Fuqua* involved the abandonment of a motion for reduction of sentence pursuant to C.R.C.P. 35(b). We are not aware of any case that has extended the abandonment principle to motions for a new trial. Accordingly, we address the merits of defendant's appeal.

## II.

Defendant contends that the trial court erred in failing to deliver his three proposed "surrender" instructions. We perceive no reversible error.

■ Initially, we reject defendant's argument that the trial court's decision to give an abandonment instruction and refusal to give his proposed "surrender" instructions deprived him of the opportunity to present his theory of the case. Defendant's theory was

that he completed the commission of the crime of attempted robbery and then surrendered to the victim. The trial court delivered a separate theory of defense instruction which embodied his claimed "surrender" to the victim.

## A.

■ There was no error in refusing the first two instructions tendered by the defense as they were embodied in the court's other instructions. *See People v. Tippett,* 733 P.2d 1183 (Colo.1987).

The first of defendant's proposed "surrender" instructions pertained to termination or abandonment of the attempted aggravated robbery. The instruction stated:

> Where the defendant has been attempting to commit an aggravated robbery, he may terminate or abandon such activity by communicating his desire to terminate such activity and his desire to surrender to the other person by taking actions which would demonstrate and cause a reasonable person to believe that defendant had terminated said act and surrendered.

This tendered and rejected first instruction on "surrender" was nearly identical to the first paragraph of an instruction which was submitted to the jury and which stated:

> Where the defendant has been attempting to commit an aggravated robbery, he may abandon the attempt by communicating his desire to abandon to the other person by taking actions which would demonstrate and cause a reasonable person to believe that the defendant had abandoned the attempted aggravated robbery.

Similarly, defendant's second proposed instruction stated:

> It is an affirmative defense to the crimes of second degree murder and manslaughter that the defendant:
>
> 1. was the initial aggressor, but
>
> 2. withdrew from the encounter, and
>
> 3. effectively communicated to the other person his intent to do so, and
>
> 4. the other person nevertheless continued or threatened the use of unlawful physical force.

This second proposed instruction was virtually identical to the last paragraph of an instruction which was given to the jury and stated:

A person is not justified in using physical force if he is the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force.

We are unpersuaded, with respect to the foregoing instructions, that there is a practical distinction between defendant's proposed use of the term "surrender" in the tendered instructions and the term "abandonment" used in the delivered instructions. Accordingly, we perceive no error in the trial court's refusing to give defendant's first two tendered instructions. *See People v. Tippett, supra.*

### B.

The third and final "surrender" instruction offered by defendant and rejected by the trial court provided as follows:

A person is not justified in using physical force in the furtherance of a felony or the immediate flight therefrom. However, when the defendant had attempted to commit a felony, he must, in order to rely on self-defense, have terminated his participation in said felony and he must have communicated to the other person his intent to do so by an act of surrender, then, if the other person nevertheless continues or threatens the use of unlawful physical force, the defendant is justified in using physical force upon the other person in order to defend himself from what he reasonably believes to be the imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

Defendant acknowledges that the above instruction was an attempt to circumvent the rule that self-defense is not an affirmative defense to felony murder. *See People v.*

*Burns,* 686 P.2d 1360 (Colo.App.1983). Indeed, the stated reason behind the proposed instruction was that by virtue of defendant's alleged surrender to the victim the predicate offense of attempted aggravated robbery was completed. Therefore, the argument goes, self-defense is an available defense as to the altercation which followed.

For several reasons, we reject defendant's reasoning and perceive no error in the trial court's refusal to give the third instruction.

■ First, to the extent that the tendered instruction was an attempt to place the affirmative defense of self-defense before the jury as to the charge of felony murder, it was properly refused. Section 18–3–102(2), C.R.S. (1986 Repl.Vol. 8B) states the elements of the affirmative defense to felony murder and self-defense is not included. Self-defense may be available as an affirmative defense to a predicate felony but not as to the resulting death. *People v. Burns, supra.*

■ Second, we also perceive no error in refusing to give the instruction to the extent it was intended to allow the jury to find that no felony murder occurred because defendant's alleged "surrender" completed the predicate felony prior to the killing.

■ The purpose of the felony murder statute is to hold a participant in the predicate felony accountable for a nonparticipant's death, even if unintended, as long as the death is caused by an act committed in the course or furtherance of the felony *or the immediate flight therefrom. See People v. Raymer,* 662 P.2d 1066 (Colo.1983); *People v. Kittrell,* 786 P.2d 467 (Colo.App.1989); *see also People v. Hickam,* 684 P.2d 228 (Colo. 1984); *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976).

■ The inclusion of the concept of "immediate flight therefrom" contemplates that the predicate felony has been completed, or even abandoned prior to completion, and the defendant is in the process of extricating himself from the scene. If the killing arises out of the "same transaction" as the predicate felony, it is proper to instruct the jury on the charge of felony murder. *See Roybal*

*v. People,* 177 Colo. 144, 493 P.2d 9 (1972); *People v. Urrutia,* 893 P.2d 1338 (Colo.App. 1994).

According to the defendant's own testimony, the altercation between him and the victim arose out of his unsuccessful attempt to flee after the failed robbery. Indeed, the killing occurred on the premises of the liquor store only minutes or even seconds after the robbery attempt commenced. In convicting defendant of felony murder, the jury necessarily found that the killing took place in the course or furtherance of the predicate felony *or the immediate flight therefrom.* Defendant does not, on appeal, challenge that finding or assert that it was not supported by the evidence introduced at trial.

Finally, § 18–3–102(1)(b), C.R.S. (1996 Cum.Supp.), which defines felony murder, lists predicate felonies, including robbery, and includes attempts to commit the predicate felonies. Thus, attempted robbery, as charged here, is a predicate felony.

Criminal attempt is defined as "acting with the kind of culpability otherwise required for commission of an offense, [the defendant] engages in conduct constituting a substantial step toward the commission of the offense." Section 18–2–101(1), C.R.S. (1986 Repl.Vol. 8B).

Attempt contemplates the lack of completion of the underlying predicate offense, in this instance, robbery. It is, therefore, the failure to complete the robbery that makes the requisite acts an attempt. There can be no failure to complete attempted robbery because that would be attempted attempted robbery.

In this instance, the attempt was complete. The defendant entered the store with a weapon intending to rob the clerk. Therefore, the attempt was not abandoned, it was the robbery which was abandoned.

Thus, regardless of whether the attempted aggravated robbery was, in a technical sense, completed at the time the defendant shot and killed the victim, the felony murder statute still applied as the killing arose directly from the flight from the attempted robbery and was part of the same immediate transaction. *See Bizup v. People,* 150 Colo. 214, 371 P.2d

786 (1962), *cert. denied,* 371 U.S. 873, 83 S.Ct. 144, 9 L.Ed.2d 112 (1962) (rejecting defendant's claim that predicate felony of robbery had been completed at the time of the subsequent killing and concluding the homicide emanated from and was within the *res gestae* of the initial felony); *People v. Hickam, supra* (shots fired by security guard leading to shootout in which guard was killed were not intervening events which caused the guard's death to be outside scope of the felony).

Finally, we note that courts from other jurisdictions have rejected similar arguments that an alleged withdrawal or surrender served to terminate the underlying felony for purposes of the felony murder statute. *See People v. Mitchell,* 61 Cal.2d 353, 362, 38 Cal.Rptr. 726, 732, 392 P.2d 526, 532 (1964) (participation in underlying felony created "explosive and dangerous situation" such that even alleged surrender prior to actual killing did not terminate underlying felony for purposes of felony murder); *State v. Dennison,* 115 Wash.2d 609, 801 P.2d 193 (1990) (rejecting allegation that surrender concluded the underlying felony and allowed self-defense, in part because defendant admitted he was fleeing scene of burglary at time of killing).

In sum, based upon the undisputed evidence, we conclude that the trial court did not err in refusing the third proposed instruction.

### III.

Defendant further contends that the trial court erred in denying his motion for a new trial based upon juror misconduct. We disagree.

■ A conviction will not be overturned and a new trial granted based upon allegations of juror misconduct unless the defendant affirmatively establishes that the misconduct occurred and that he suffered actual prejudice therefrom. *See People v. Garcia,* 752 P.2d 570 (Colo.1988); *People v. Hernandez,* 695 P.2d 308 (Colo.App.1984).

■ Here, defendant's allegations of misconduct were based on an affidavit of a person who stated that she had overheard a

**1258**

conversation between two of defendant's jurors which occurred in the hallway during the evidentiary phase of the trial in which the jurors were discussing the merits of the case. In denying defendant's motion, the trial court noted that the overheard statements, in and of themselves, were insufficient to justify the granting of a new trial. We perceive no error by the trial court in denying defendant's motion for new trial on that basis. *See People v. Hernandez, supra.*

The judgment is affirmed.

METZGER and HUME, JJ., concur.